IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| FRANK PHILLIPS, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>D.R. HORTON, INC., et al.,<br><br>    Defendants. | Civil Action No.: GLR-19-2505 |

### **MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendant D.R. Horton, Inc.'s Motion to Dismiss (ECF No. 12); Defendant Robert C. Fesco's Motion to Dismiss (ECF No. 13); Defendants Cecil County, Kordell Wilen, Michael Evans, Tari Moore, Jason Allison, Alfred C. Wein, Jr., Eric S. Sennstrom, Cecil County Sheriff's Office, and Sergeant Brian Soler's (collectively, "County Defendants") Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment (ECF No. 30);[1] and Defendant Nichols Nursery, Inc., d/b/a Nichols Excavating's Motion to Dismiss (ECF No. 35).[2] The Motions are ripe for

---

[1] County Defendants styled their Motion to Dismiss as a Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment. The Court does not rely on the additional "indisputable material facts" set forth in the County Defendants' Motion and will construe it as a Motion to Dismiss.

[2] Also pending are Plaintiffs' Frank Phillips, Monique Phillips, Jatin Patel, Janki Patel, Samuel McCullom, and Cathy McCullom's Motion for a Temporary Stay (ECF No. 25), Motion to Strike (ECF No. 33), Motion for Summary Judgment (ECF No. 42); and Motion to Strike the Nichols Pleadings (ECF No. 46), as well as County Defendants' Motion for Leave to File Excess Pages (ECF No. 29). The Court will grant the County Defendants' Motion for Leave to File Excess Pages nunc pro tunc. However, because the Court will grant the Defendants' Motions to Dismiss, the Court denies Plaintiffs' Motions as moot.

disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motions.

## I.   BACKGROUND[3]

Plaintiffs Frank and Monique Phillips, Samuel and Cathy McCollum, and Jatin and Janki Patel are homeowners in The Reserve at Elk River, a neighborhood in Elkton, Maryland designed by Defendant D.R. Horton, Inc. ("D.R. Horton"). (Compl. ¶ 22, ECF No. 1).

In 2006, with D.R. Horton's blessing, Plaintiffs contracted a third party vendor to construct "masonry monuments" at the end of their driveways, which Plaintiffs used as mailboxes (hereinafter, the "Structures"). (Id. ¶ 28). In or around September 2013, through communications with Defendant Michael Evans, the Supervisor of Construction Inspections for the Department of Public Works, the McCollums became aware that Defendant Cecil County (the "County") had determined the Structures were not in compliance with local ordinances. (Id. ¶¶ 14, 29). Specifically, the Cecil County Road Code provides that "[n]o structures are permitted in the right-of-way without prior approval of the Department. Mailboxes are allowed in the right-of-way provided they are mounted on a traditional post . . . . No bricked or other rigid structures are allowed." Cecil Cty., Md. Road Code § 2.14 (2008) (the "Road Code").

---

[3] Unless otherwise noted, the Court takes the following facts from Plaintiffs' Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

The McCollums wrote to the County[4] seeking a variance pursuant to Road Code § 1.06. (Compl. ¶ 31). In March 2014, D.R. Horton informed the Phillips and the McCollums[5] that the Structures did not comply with Road Code standards because they encroached on the right-of-way. (Id. ¶ 32). D.R. Horton demanded the Structures be removed by the end of April 2014. (Id.). The McCollums responded by informing D.R. Horton of their request for a variance, and the Phillips raised the issue in a Cecil County Council meeting the following month. (Id. ¶¶ 33–34).

In August 2014, Defendant Jason Allison wrote to Plaintiffs and explained that they could retain the Structures if they agreed to hold the County harmless for any claims or liability arising from the presence of the Structures. (Id. ¶ 37). Plaintiffs did not agree to this offer. (Id. ¶ 38). The matter appears to have been left unresolved for nearly two years, but in July 2016, D.R. Horton again contacted Plaintiffs to request the removal or relocation of the Structures. (Id. ¶ 40). The Plaintiffs again refused, and in September 2016, Defendant Nichols Nursery, Inc., d/b/a Nichols Excavating ("Nichols") uprooted and removed the Structures. (Id. ¶¶ 41–44).

On August 30, 2019, Plaintiffs, proceeding pro se, filed a Complaint against D.R. Horton, Robert C. Fesco, County Defendants, and Nichols. (ECF No. 1). The eight-count Complaint alleges: civil conspiracy (Count I); trespass to land or possessory interest (Count II); trover and conversion — wrongful taking (Count III); detinue (Count IV); a taking in

---

[4] Plaintiffs do not specify to whom they addressed this correspondence.
[5] The Patels did not purchase their home in The Reserve at Elk River until May 2015. (Id. ¶ 39).

violation of the Fifth Amendment of the United States Constitution (Count V); loss of liberty or property without due process and denial of equal protection in violation of Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the Constitution (Counts VI & VII); and violation of federal and state civil rights laws, 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986; Md. Code Ann., State Gov't §§ 20-402, 20-701, et seq., 20-801, 20-1103, 20-1104 (Count VIII).[6] (Compl. ¶¶ 45–104). Plaintiffs seek actual and punitive damages, pre- and post-judgment interest, and attorneys' fees. (Id. at 18).

On November 27, 2019, D.R. Horton and Fesco each filed a Motion to Dismiss. (ECF Nos. 12, 13). Plaintiffs filed an Opposition to both Motions on December 10, 2019. (ECF No. 24). On December 27, 2019, County Defendants filed their Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment. (ECF No. 30). Plaintiffs filed an Opposition on December 31, 2019. (ECF No. 34). County Defendants filed a Reply on January 14, 2020. (ECF No. 38). Nichols filed its Motion to Dismiss on January 13, 2020. (ECF No. 35). Plaintiffs filed an Opposition on January 29, 2020. (ECF No. 41). To date, the Court has no record that D.R. Horton, Fesco, and Nichols filed Replies.

## II.   DISCUSSION

### A.   Standard of Review

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[6] Plaintiffs' civil rights claim is the eighth cause of action in their Complaint; however, in what appears to be a typographical error, Plaintiffs labeled both their equal protection claim and civil rights claim as "Count VII." Accordingly, the Court will refer to Plaintiffs' civil rights claim as "Count VIII."

defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

Pro se pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). Nonetheless, "[w]hile pro se complaints may 'represent the work of an untutored hand requiring special judicial solicitude,' a district court is not required to recognize 'obscure or extravagant claims defying the most concerted efforts to unravel them.'" Weller v. Dep't of Soc. Servs. for Balt., 901 F.2d 387, 391 (4th Cir. 1990) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985)). Further, "[t]he Court cannot act as a pro se litigant's 'advocate and develop, sua sponte, statutory and constitutional claims' that the litigant failed to raise on the face of the complaint." Branch v. Machen, No. 3:14CV708, 2014 WL 6685497, at *2 (E.D.Va. Nov. 25, 2014) (quoting Newkirk v. Circuit Court of Hampton, No. 3:14CV372–HEH, 2014 WL 4072212, at *1 (E.D.Va. Aug. 14, 2014)).

**B.   Analysis**

    **1.   Federal Claims (Counts V–VIII)**

Plaintiffs assert that Defendants violated the Takings Clause of the Fifth Amendment; the Due Process Clause of the Fourteenth Amendment; the Equal Protection Clause of the Fourteenth Amendment; and 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986.[7] The Court addresses each claim in turn.

---

[7] For each of these counts, Plaintiffs have also asserted violations of analogous provisions of the Maryland State Constitution and Maryland laws. For reasons set forth below, the Court declines to evaluate Plaintiffs' state law claims.

### a.     Takings Clause (Count V)

Plaintiffs allege that Defendants "did take the personal property of the Plaintiffs and place restrictions on the real property of the Plaintiffs for the benefit of the public." (Compl. ¶ 74). The Takings Clause of the Fifth Amendment does not bar the taking of private property, but rather requires compensation in the event an "otherwise proper interference [with private property] amount[s] to a taking." First English Evangelical Lutheran Church of Glendale v. L.A. Cty., Cal., 482 U.S. 304, 314–15 (1987); U.S. Const. amend. V. The Takings Clause "does not address in specific terms the imposition of regulatory burdens on private property." Murr v. Wisconsin, 137 S.Ct. 1933, 1942 (2017) (quoting Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 321 (2002)). The U.S. Supreme Court has held, however, that "while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." Id. (quoting Pa. Coal Co. v. Mahon, 260 U.S. 393, 415 (1922)).

The Supreme Court has identified two circumstances under which a regulation may go "too far." First, "with certain qualifications . . . a regulation which denies all economically beneficial or productive use of land will require compensation under the Takings Clause." Id. at 1942–43 (alteration in original) (internal quotation marks omitted) (quoting Palazzolo v. Rhode Island, 533 U.S. 606, 617 (2001)). Second, "when a regulation impedes the use of property without depriving the owner of all economically beneficial use, a taking still may be found based on 'a complex of factors'" known as the Penn Central test. Id. at 1943 (citing Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978)). These factors include: "(1) the economic impact of the regulation

7

on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." Id. (citing Palazzolo, 533 U.S. at 617 (citing Penn Cent., 438 U.S. at 124)). In applying the Penn Central test, the Court focuses on "the parcel as a whole," Tahoe-Sierra, 535 U.S. at 327 (quoting Penn Cent., 438 U.S. at 130–31). Additionally, the first two factors—economic effects and investment-backed expectations—are "primary" among the Penn Central factors. See Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 538–39 (2005). Because Plaintiffs have not alleged a total deprivation of all economically beneficial use of their property, the Court will apply the Penn Central test.

Here, the regulation at issue is the Road Code. The regulation states that "[n]o structures are permitted in the right-of-way without prior approval of the Department." Road Code § 2.14. The taking Plaintiffs allege is the destruction and removal of the Structures. Plaintiffs do not allege any "investment-backed expectations" relating to the purported taking. Plaintiffs similarly do not provide any detail regarding the economic impact of the taking. Finally, the character of the governmental action was decidedly fair: the County gave Plaintiffs years to resolve the purported violation of the Road Code, including offering Plaintiffs an option that would allow them to preserve the Structures. (Compl. ¶¶ 29–37). Indeed, approximately three years had passed after Plaintiffs first declined to act on requests from Defendants D.R. Horton and the County that they remove or relocate the Structures before the Defendants brought Plaintiffs in compliance with the Road Code by removing the Structures. (Id. ¶¶ 40–44). In sum, this regulation has not gone "too far" under the Penn Central test and the removal of the Structures by the Defendants

did not constitute an unlawful taking. As a result, the Court will dismiss Plaintiffs' Takings Clause claim.

### b. Due Process Clause (Count VI)

Plaintiffs allege that Defendants have "not only restricted the use of the Plaintiff[]s['] real property, but ha[ve] physically and permanent [sic] removed personal property from the possession of the Plaintiffs without condemnation or any order of the court, otherwise." (Compl. ¶ 83). Plaintiffs further allege that "the Defendants failed to respond to the requests of the Plaintiffs and have denied them the opportunity to be heard on the issue of variances for the masonry monuments alone. In doing so, the Defendants have precluded the Plaintiffs from their right to a decision and the applicable, statutory appellate rights." (Id. ¶ 85). While Plaintiffs do not specify, based on the language in the Complaint, the Court presumes the Plaintiffs intend to bring a procedural due process claim.[8]

The Fourteenth Amendment forbids state officials from depriving any person of property without due process of the law. U.S. Const. amend. XIV; Goss v. Lopez, 419 U.S. 565, 572 (1975). To plead a procedural due process claim under the Fourteenth Amendment, a plaintiff "must first establish that he had a property or liberty interest at

---

[8] To the extent Plaintiffs attempt to allege a substantive due process claim, such a claim would assuredly fail. In order to prevail on such a claim, Plaintiffs must allege a deprivation that occurred "in a manner so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Siena Corp. v. Mayor & City Council of Rockville, 873 F.3d 456, 461 (4th Cir. 2017) (internal quotation marks omitted). As discussed above, Plaintiffs' Complaint alleges a deprivation of property that appears to have been handled in a fair and patient manner, and was by no means "far beyond the outer limits of legitimate governmental action."

stake." Smith v. Ashcroft, 295 F.3d 425, 429 (4th Cir. 2002) (citing Stewart v. Bailey, 7 F.3d 384, 392 (4th Cir. 1993)). The Plaintiffs' liberty is not at issue here, so their only possible interest is one of property. To have a property interest, "a person clearly must have more than an abstract need or desire" or mere "unilateral expectation of it" and instead must have "a legitimate claim of entitlement to it." Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). Property interests are not created by the Constitution but rather by "existing rules or understandings that stem from an independent source such as state law." Id.

The law of Cecil County—particularly, § 2.14 of the Road Code— states that "[n]o structures are permitted in the right-of-way without prior approval of the Department." Thus, Plaintiffs' primary allegation with respect to their deprivation of procedural due process appears to be that Cecil County did not respond to their requests for a variance pursuant to § 1.06 of the Road Code, which permits the County to grant a variance, or exception, to a requirement in the Road Code where an applicant has demonstrated "that exceptional circumstances exist that were not the result of actions taken by the applicant which preclude the applicant from adhering to the requirements of this Code[.]"

The Road Code further provides, however, that the appropriate forum for a party aggrieved by the County's response to their request for a variance is the Cecil County Circuit Court. Id. § 1.06(C). Plaintiffs were aware that the County had deemed the Structures noncompliant for a period of approximately three years before they were removed. (Compl. ¶¶ 29, 44). Moreover, Plaintiffs had received constructive notice from the County that it would not grant their requests for a variance by at least August 2014— more than two years before the Structures were removed—when Defendant Allison

10

notified them that they had the option of either removing the Structures or indemnifying the County against any harm caused by the Structures. (Id. ¶ 37). Plaintiffs make no allegation that they attempted to pursue an appeal of their request for a variance in Cecil County Circuit Court at any time over the course of those years. Plaintiffs cannot successfully prosecute a procedural due process claim in this Court after they failed to pursue the process available to them pursuant to the Road Code. As a result, Plaintiffs' due process claim will be dismissed.[9]

        **c.**      **Equal Protection Clause (Count VII)**

Plaintiffs allege that they are people of color, and that Defendants have permitted white residents in Cecil County with "masonry monuments" that are similar to the Structures to retain those structures without interference. (Compl. ¶¶ 96–98). Plaintiffs do not elaborate further except to note that a large majority of Cecil County is white, (id. ¶ 99), and to speculate that those other residents must have received more favorable treatment by the County. (Id. ¶ 100).

The Fourteenth Amendment's Equal Protection Clause prohibits state action that denies a person equal protection "through the enactment, administration, or enforcement of its laws and regulations." Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 818 (4th

---

[9] Plaintiffs also set forth allegations regarding an allegedly illegal contract and a series of corporate bylaws that bear no obvious relationship to Plaintiffs' due process claim or, indeed, the remainder of the Complaint. (See Compl. ¶¶ 86–93). To the extent there is a colorable allegation contained in these paragraphs relating to the Defendants, a court may dismiss a complaint that is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). The Court accordingly does not find support for Plaintiffs' claims within these paragraphs.

Cir. 1995). However, "[t]o prove that a statute has been administered or enforced discriminatorily, more must be shown than the fact that a benefit was denied to one person while conferred on another." Id. at 819 (citing Snowden v. Hughes, 321 U.S. 1, 8 (1944)). "Thus, even when a facially neutral statute has a 'racially disproportionate impact,' a discriminatory animus must nevertheless be proved to establish an equal protection violation." Id. (citing Washington v. Davis, 426 U.S. 229, 239 (1976)).

Here, Plaintiffs provide only conclusory allegations and conjecture regarding the purported discriminatory animus underlying Defendants' decision to remove the Structures. Indeed, Plaintiffs made no allegations concerning the treatment of similar masonry monuments erected by white homeowners in The Reserve at Elk River, which may have provided a similarly situated comparator. These threadbare allegations are not sufficient to state an equal protection claim. For these reasons, Plaintiffs' equal protection claim will be dismissed.

### d.     Civil Rights Claims (Count VII)

Plaintiffs' allegations concerning Defendants' alleged "violation of civil rights laws" are similarly threadbare. Plaintiffs assert that "Defendants have made concerted effort[s] to act in a manner that deprives the Plaintiffs of their civil rights under federal and state laws." (Compl. ¶ 102). Plaintiffs add that "based upon the demographic make-up of Cecil County, the application of the law, and the Defendants['] conduct toward the Plaintiffs, the Plaintiff can prove that the Defendants['] conduct was motivated by their membership in a protected minority class." (Id. ¶ 104). Plaintiffs rely on these assertions

to support their allegations that Defendants violated a host of civil rights laws, including 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986.

As an initial matter, as set forth above, Plaintiffs provide only conclusory allegations and conjecture regarding the purported discriminatory animus underlying Defendants' decision to remove the Structures. This fact alone is sufficient to determine that Plaintiffs fail to state a claim under any of these statutes. There are, however, additional reasons to dismiss Plaintiffs' claims under several of the statutes.

"[Section] § 1981 and [section] 20-304 of the State Government Article of the Maryland Annotated Code prohibit discrimination based on race in the making and enforcement of business contracts." Jarvis v. Staples, Inc., No. PJM 10-244, 2010 WL 4942010, at *3 (D.Md. Nov. 30, 2010), aff'd, 426 F.App'x 193 (4th Cir. 2011). There is no allegation in this case involving a business contract between Plaintiffs and any of the Defendants. As a result, Plaintiffs fail to state a claim under 42 U.S.C. § 1981.

Section 1982 prohibits "all racial discrimination, private as well as public," with respect to property rights. Jones v. Alfred H. Mayer Co., 392 U.S. 409, 413 (1968). Like the Equal Protection Clause, to establish a claim under 42 U.S.C. § 1982, Plaintiffs must demonstrate discriminatory intent, not merely discriminatory effect. See City of Cuyahoga Falls v. Buckeye Cmty. Hope Found., 538 U.S. 188, 195 (2003). As set forth above, Plaintiffs have not alleged discriminatory intent with any level of specificity. As a result, Plaintiffs fail to state a claim under 42 U.S.C. § 1982.

"Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S.

266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). To prevail on a § 1983 claim, a plaintiff must demonstrate a deprivation of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation was committed by a "person" acting under color of state law. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citation omitted). "In analyzing a § 1983 claim, a court must first identify 'the specific constitutional right allegedly infringed.'" Hamilton v. Mayor & City Council of Balt., 807 F.Supp.2d 331, 343 (D.Md. 2011) (citing Albright, 510 U.S. at 271). Here, as set forth above, Plaintiffs' allegations of constitutional violations all fail to state a claim for which relief may be granted. As a result, Plaintiffs cannot state a claim under 42 U.S.C. § 1983.

Section 1985 authorizes a cause of action if "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." 42 U.S.C. § 1985(3). Similarly, § 1986 establishes liability for persons who have knowledge of a conspiracy to interfere with civil rights in violation of § 1985 and the power to prevent or aid in preventing those acts, but who neglect or refuse to do so. 42 U.S.C. § 1986. In order to establish a cause of action under 42 U.S.C. § 1985(3), a plaintiff must prove:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995) (citing Buschi v. Kirven, 775 F.2d 1240, 1257 (4th Cir. 1985)).

To survive a motion to dismiss, plaintiffs alleging conspiracy under 42 U.S.C. § 1985(3) must "plead specific facts in a nonconclusory fashion." Gooden v. Howard Cty., Md., 954 F.2d 960, 970 (4th Cir. 1992). Here, Plaintiffs fail to satisfy that requirement because they have made only vague, threadbare, and conclusory allegations without alleging any facts from which this Court can draw a reasonable inference that such a conspiracy occurred. Thus, Plaintiffs fail to state a claim under 42 U.S.C. § 1985. Moreover, because "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985," Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985), Plaintiffs also fail to state a claim under 42 U.S.C. § 1986.

In sum, Plaintiffs' claims under the Takings Clause of the Fifth Amendment; the Due Process Clause of the Fourteenth Amendment; the Equal Protection Clause of the Fourteenth Amendment; and 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986 will be dismissed for failure to state a claim.

### 2. State Claims

Plaintiffs' remaining claims arise under state law. For the reasons outlined below, the Court will dismiss these claims for lack of subject-matter jurisdiction.[10]

---

[10] Although only Nichols moved to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court will review the pleadings to determine whether it retains subject-matter jurisdiction in this matter.

15

"[F]ederal courts are courts of limited jurisdiction." Home Buyers Warranty Corp. v. Hanna, 750 F.3d 427, 432 (4th Cir. 2014) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). There are three principal bases for subject-matter jurisdiction in federal court: (1) federal-question jurisdiction; (2) diversity jurisdiction; (3) and supplemental jurisdiction. Costley v. City of Westminster, No. GLR-16-1447, 2017 WL 5635463, at *1 (D.Md. Jan. 26, 2017); see also Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005).

Here, the Court lacks federal question jurisdiction over Plaintiffs' remaining claims because they arise under state law. See 28 U.S.C. § 1331. As for diversity jurisdiction, 28 U.S.C. § 1332 requires complete diversity "such that the state of citizenship of each plaintiff must be different from that of each defendant." Home Buyers Warranty Corp., 750 F.3d at 433 (quoting Athena Auto., Inc. v. DiGregorio, 166 F.3d 288, 290 (4th Cir. 1999)). In the present case, Plaintiffs all reside in Cecil County, Maryland, (Compl. ¶¶ 8–10), and the County is a governmental entity within the state of Maryland. Thus, complete diversity does not exist because Plaintiffs and the County are all citizens of Maryland.

District courts may decline to exercise supplemental jurisdiction over a state claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). District courts "enjoy wide latitude" in making this determination. Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). In exercising their discretion, district courts consider the following factors: "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." Id. (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988)).

Here, there are no obvious reasons why pursuing this action in a federal district court will be more convenient or fair to the parties or otherwise serve the interests of judicial economy. The case does not present underlying issues of federal policy. For these reasons, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims.

Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Having determined that it lacks federal question, diversity, or supplemental jurisdiction over Plaintiffs' remaining claims, the Court will dismiss the Complaint in its entirety for lack of subject-matter jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court will grant D.R. Horton's Motion to Dismiss (ECF No. 12); Fesco's Motion to Dismiss (ECF No. 13); County Defendants' Motion to Dismiss the Complaint or, in the Alternative, for Summary Judgment (ECF No. 30); and Nichols' Motion to Dismiss (ECF No. 35). A separate Order follows.

Entered this 18th day of September, 2020.

/s/
George L. Russell, III
United States District Judge